# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

---

RAHEEM WHITMORE,

        Plaintiff,

   v.

MAFCO WORLDWIDE, LLC and
RAYMOND ARTZBERGER,

        Defendants.

1:19-cv-8477-NLH-KMW

**OPINION**

---

**APPEARANCES:**

SAMUEL CORDRAY WILSON
DEREK SMITH LAW GROUP, PLLC
1835 MARKET STREET
SUITE 2950
PHILADELPHIA, PA 19103

   *Attorneys for Plaintiff.*

THOMAS GERARD SERVODIDIO
DUANE MORRIS LLP
30 SOUTH 17TH STREET
PHILADELPHIA, PA 19103-4196

NATALIE FRANCES BARE
DUANE MORRIS LLP
30 SOUTH 17TH STREET
PHILADELPHIA, PA 19103-4196

   *Attorneys for Defendants.*

**HILLMAN**, District Judge

     In this employment action, Plaintiff Raheem Whitmore ("Plaintiff") alleges Defendant MAFCO Worldwide, LLC ("Mafco") and one of its employees, Raymond Artzberger ("Artzberger")

(collectively, "Defendants") discriminated against him when they called him racially-insensitive, derogatory names before firing him shortly thereafter.  Mafco contends Plaintiff was never referred to in any inappropriate manner, and contends further that Plaintiff was not discriminated against, but rather, was fired after he was caught urinating on the floor of a storage warehouse containing food-grade, edible product, in violation of company policy.

This matter comes before the Court on Defendants' motion for summary judgment (ECF No. 17).  For the reasons that follow, Defendants' motion will be granted.

## BACKGROUND

The Court takes its facts from the parties' statements of material fact submitted pursuant to Local Civil Rule 56.1(a) and notes disputes where appropriate.

Mafco manufactures, stores, and ships edible licorice products.  (ECF No. 17-10 ("Def. SOMF") at ¶1).  Plaintiff, an African American male, was employed by Mafco as an electrician, most recently in Mafco's Maintenance Department in Camden, New Jersey.  See (Def. SOMF at ¶2).

On March 7, 2018, Plaintiff was tasked with hanging light fixtures in a storage facility housing raw material used for creating edible licorice products.  (Def. SOMF at ¶41).

2

According to Defendants, around 10:30 a.m., Artzberger, Mafco's Maintenance Manager and Plaintiff's supervisor, traveled to Plaintiff's location to monitor Plaintiff's progress.  Upon arrival, Artzberger says he observed Plaintiff "with his pants open, urinating on the floor in a zigzag motion."  (Def. SOMF at ¶44).  According to Artzberger, he yelled out "you better not be pissing on the floor," after which Plaintiff quickly turned away and began zipping up his pants.  (Def. SOMF at ¶44).  Artzberger approached further and saw liquid on the ground near where Plaintiff was standing and smelled a strong odor of urine.  (Def. SOMF at ¶44).

Plaintiff tells a different story.  According to Plaintiff, Artzberger arrived in the warehouse, observed Plaintiff adjusting his pants, assumed Plaintiff was urinating, and lashed out a Plaintiff calling him an "animal" and "nasty nigger[.]"  (ECF No. 21-1 ("Pl. SOMF") at ¶¶45, 62, 66).  Plaintiff protested that he had not urinated on the floor and that Artzberger was mistaken.  Plaintiff says he immediately objected to Artzberger's name calling and informed Artzberger that he planned to report him to Mafco.  (Pl. SOMF at ¶66).  Defendants directly reject Plaintiff's accusations.

After the incident, Artzberger collected photos of the area and immediately reported the incident to his supervisor, the

Director of Manufacturing, Stanley Washington ("Washington"). (Def. SOMF at ¶¶4, 45, 62).  Washington visited the location of the incident shortly thereafter where he observed liquid on the ground forming a zigzag pattern.[1]  (Def. SOMF at ¶¶46-47, 53). Washington also noted an odor of urine.  See (Def. SOMF at ¶¶46-47, 53).

Later that day, Washington collected culture samples from the incident location on two occasions, the second of which occurred in the presence of Plaintiff's union representative. (Def. SOMF at ¶¶68-71).  Those samples were then sent for DNA and sample-type testing at a local laboratory.[2]  (Def. SOMF at ¶¶68-71).

On March 8, 2018, Washington interviewed Plaintiff's union representative to obtain Plaintiff's version of events.  (Def.

---

[1] While Plaintiff denies these allegations, he cites no other evidence contradicting them.  Instead, Plaintiff suggests the area may have been contaminated by other employees and that there was no way to determine that any urine located there belonged to Plaintiff.  (Pl. SOMF at ¶¶46-47).  Such objections, however, do not directly contradict the facts asserted: that Washington visited the incident location and observed urine on the ground.  As such, these facts will be taken over Plaintiff's objection.

[2] After the decision to terminate Plaintiff had been made, those samples returned positive for urine, but inconclusive on whether the urine was Plaintiff's.  (ECF No. 17-5 at 48).  Plaintiff's DNA was present in the samples provided by Mafco, but the parties offer differing explanations as to why Plaintiff's DNA was present.  (ECF No. 21-8 at ¶15).

SOMF at ¶49).  According to the union representative, Plaintiff
did not urinate on the floor.  (Def. SOMF at ¶50).  Instead, the
scene Artzberger witnessed was Plaintiff adjusting his clothing
because a safety harness he had been wearing became
uncomfortable.  (Def. SOMF at ¶50).  The liquid on the floor,
the union representative explained, came from some nearby
machinery.  (Def. SOMF at ¶50).

Washington did not believe Plaintiff's version of events.
(Def. SOMF at ¶¶51-53).  Having concluded that Plaintiff
urinated on the floor, in violation of Mafco's code of conduct
and employment rules, Washington decided to fire Plaintiff.[3]
(Def. SOMF at ¶72).

Thereafter, Defendants say Washington drafted a letter
advising Plaintiff and his union of the termination decision.
(Def. SOMF at ¶¶80-82).  Plaintiff, however, identifies this
letter in the record, and it undeniably contains a date of March
7, one day before Washington allegedly completed his
investigation, and lists Artzberger as the signatory, not

---

[3] Plaintiff denies these facts, averring only that "[o]ther
employees had access to the area where urine was found by
Washington over 15 minutes after Defendant Artzberger accused
Plaintiff of urinating on the floor.  There was no way to
determine that the alleged substance was urine and certainly no
way to tell that it was Plaintiff's urine."  (Pl. SOMF at ¶72).
This blanket denial is sufficient to rebut the conclusion of the
lab report that the sample Washington collected contained urine.

Washington.  (ECF No. 17-5 at 44).  The letter states that
Plaintiff was being terminated for urinating on the floor and
for "insubordination, willful neglect of duty or disobedience of
reasonabl[e] instructions by a supervisor[.]" (ECF No. 17-5 at
44) (certain capitalization of words modified).  The body of the
letter reads:

> You are hereby being terminated for a Major Work
> Rule Violation.  On 3/7/2018 you were seen urinating
> on the 3rd floor of building 50.  Your direct
> Supervisor witnessed you urinating and smelled an
> extremely strong odor of urine.  Once you became aware
> of the Supervisor's presence, you turned around and
> the Supervisor saw you making a gesture similar to
> pulling up your zipper.
>
> You were in an area where you were not supposed
> to be, which is [i]nsubordination and disobedience of
> reasonable instructions to remain in your assigned
> work area.  Public urination in the workplace is a
> willful neglect of your duty.  Particularly since the
> Company is a food-grade manufacturing facility, this
> behavior is unsanitary, unacceptable and puts our
> product and Company at risk.

(ECF No. 17-5 at 44).

On March 9, 2018, Artzberger met with Plaintiff and his
union representative to review Plaintiff's termination.  (Def.
SOMF at ¶84).  That same day, Plaintiff was released from his
employment with Mafco.

More than a month after he was fired, on April 22, 2018,
Plaintiff messaged Washington stating that Artzberger had called
him racially-motivated, derogatory names during the March 7

incident.  (Def. SOMF at ¶97).  Prior to his termination,
though, Plaintiff never reported, either to his union or Mafco,
that he was spoken to in an inappropriate manner by Artzberger.
While Plaintiff denies this fact, his deposition testimony
belies his position.  Plaintiff was asked "do you now remember
that you told Mr. Artzberger you're going to report him to human
resources" to which Plaintiff responded "Yes.  I said I'm going
to say something, but I never said nothing."  See (ECF No. 21-6
("Pl. Dep.") at 216:7 – 217:25).  When asked shortly thereafter
if he "ever [did] go to human resources" Plaintiff responded
"No[.]"  See id.  Plaintiff testified that he only first
reported the matter after he was fired.  See (Pl. Dep. 216:2-8).

     Plaintiff filed a charge of discrimination with the EEOC on
July 21, 2018 and alleges he received a right to sue letter on
December 20, 2018.  (ECF No. 21-4 at 4; ECF No. 1 at ¶4).
Thereafter, Plaintiff filed his complaint in this matter on
March 13, 2019, advancing six separate yet related claims
against Defendants: (1) discrimination, in violation of Title
VII of the Civil Rights Acts of 1964, 42 U.S.C. § 2000e-2
("Title VII"); (2) Title VII retaliation; (3) discrimination, in
violation of the New Jersey Law Against Discrimination
("NJLAD"), N.J.S.A. § 10:5-12(a); (4) NJLAD retaliation; (5)
NJLAD aiding and abetting; and (6) a discrimination claim under

42 U.S.C. § 1981.  Defendants moved for summary judgment on
December 27, 2019 (ECF No. 17).  Plaintiff opposed Defendants'
motion on January 21, 2020 (ECF No. 21).  As such, this matter
is fully briefed and ripe for adjudication.

**DISCUSSION**

### I.   Subject Matter Jurisdiction

This Court exercises subject matter jurisdiction pursuant
to 28 U.S.C. §§ 1331 and 1367.

### II.  Legal Standard

Summary judgment is appropriate where the Court is
satisfied that "'the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits if any,' . . . demonstrate the absence of a genuine
issue of material fact" and that the moving party is entitled to
a judgment as a matter of law." Celotex Corp. v. Catrett, 477
U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56).

An issue is "genuine" if it is supported by evidence such
that a reasonable jury could return a verdict in the nonmoving
party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
248 (1986).  A fact is "material" if, under the governing
substantive law, a dispute about the fact might affect the
outcome of the suit. Id.  "In considering a motion for summary
judgment, a district court may not make credibility

8

determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (citing Anderson, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."); see Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by []showing[]--that is, pointing out to the district court—-that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." (citing Celotex, 477 U.S. at 325)).

Once the moving party has met this burden, the nonmoving

party must identify, by affidavits or otherwise, specific facts

showing that there is a genuine issue for trial.  Celotex, 477

U.S. at 324.  A "party opposing summary judgment 'may not rest

upon the mere allegations or denials of the . . . pleading[s].'"

Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).  For

"the non-moving party[] to prevail, [that party] must 'make a

showing sufficient to establish the existence of [every] element

essential to that party's case, and on which that party will

bear the burden of proof at trial.'"  Cooper v. Sniezek, 418 F.

App'x 56, 58 (3d Cir. 2011) (citing Celotex, 477 U.S. at 322).

Thus, to withstand a properly supported motion for summary

judgment, the nonmoving party must identify specific facts and

affirmative evidence that contradict those offered by the moving

party.  Anderson, 477 U.S. at 257.

## ANALYSIS

### I.   Title VII, NJLAD, and 42 U.S.C. § 1981 Discrimination Claims

Discrimination claims brought under Title VII, the NJLAD,

and Section 1981 are governed by nearly identical standards.

Tourtellotte v. Eli Lilly & Co., 636 F. App'x 831, 843 (3d Cir.

2016); Armstrong v. Burdette Tomlin Mem'l Hosp., 438 F.3d 240,

249 (3d Cir. 2006); Brown v. J. Kaz, Inc., 581 F.3d 175, 181–82

(3d Cir. 2009) (citing Schurr v. Resorts Int'l Hotel, Inc., 196

F.3d 486, 499 (3d Cir. 1999)).  Therefore, Plaintiff's various discrimination claims will be analyzed together.

Discrimination claims are governed by the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).  Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008); Leftwich v. Sec'y United States Dep't of the Treasury, 741 F. App'x 879, 881 (3d Cir. 2018).  Under McDonnell Douglas, once a plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate, nonretaliatory or nondiscriminatory reason for its actions. Tourtellotte, 636 F. App'x at 841-42; Moore v. City of Phila., 461 F.3d 331, 342 (3d Cir. 2006); Viscik v. Fowler Equip. Co., 800 A.2d 826, 833 (N.J. 2002).  If the employer produces such a reason, the burden then shifts back to the plaintiff to prove that the employer's nonretaliatory or nondiscriminatory explanation is merely a pretext for the discrimination or retaliation.  McDonnell Douglas Corp., 411 U.S. at 802-04, 93 S. Ct. 1817.

"To state a prima facie claim of employment discrimination . . . , a plaintiff must allege: (1) membership in a protected class; (2) qualification for the position sought to be retained or attained; (3) an adverse employment action; and (4) that 'the

action occurred under circumstances that could give rise to an inference of intentional discrimination.'" Jean-Pierre v. Schwers, 682 F. App'x 145, 147 (3d Cir. 2017) (quoting Makky, 541 F.3d at 214). If a plaintiff makes that prima facie showing, "then an inference of discriminatory motive arises and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action." Makky, 541 F.3d at 214. If a defendant articulates such a reason, "the inference of discrimination drops and the burden shifts back to the plaintiff to show that the defendant's proffered reason is merely pretext for intentional discrimination." Id. "The primary focus is ultimately on whether the employer treated some people less favorably than others because of their race, color, religion, gender, or national origin." Leftwich, 741 F. App'x at 881 (citing Sarullo v. U.S. Postal Serv., 352 F.3d 789, 798 (3d Cir. 2003)).

As the Third Circuit explained in Brown v. J. Kaz, Inc., a plaintiff must first identify "direct evidence of discrimination," which our Circuit Court has defined as "evidence sufficient to allow the jury to find that the decision makers placed substantial negative reliance on [the plaintiff's race] in reaching their decision to fire [him]." Brown, 581 F.3d 175, 183-84 (3d Cir. 2009) (quoting Fakete v. Aetna, Inc.,

308 F.3d 335, 338 (3d Cir. 2002)).  One method sufficient to shift the burden of persuasion is to identify statements of a person involved in the decision-making process that reflect a discriminatory or retaliatory animus of the type complained of in the suit.  Id. (citing Fakete, 308 F.3d at 339).  Where such showings have been made, a defendant is only entitled to summary judgment where it proves "that if [race] had not been part of the process, its [termination] decision . . . would nonetheless have been the same."  Id. (quoting Price Waterhouse v. Hopkins, 490 U.S. 228, 279, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989) (O'Connor, J., concurring)).

Defendants argue Plaintiff has not stated a prima facie case for discrimination because he has not identified any evidence suggesting a racial motivation for his termination by a Mafco decision maker.  The Court disagrees.

Plaintiff unquestionably identified evidence showing that (1) as an African-American male, he is a member of a protected class, and (2) he was fired by Mafco.  The Court also finds Plaintiff makes a prima facie showing that he is qualified for the role in which he served as he had successfully served in such a capacity for more than one year.  See (ECF No. 17-6 at ¶2); see (ECF No. 17-10 at ¶64).

Plaintiff also identifies evidence he was called racially
motivated names in connection with his termination by
Artzberger.  While Defendant argues Artzberger was not a
decision-maker in Plaintiff's termination, Plaintiff identifies
evidence suggesting otherwise.  Most notably, Plaintiff
identifies his termination letter, which undeniably identifies
Artzberger as the signatory.  (ECF No. 17-5 at 44).  From the
evidence Plaintiff identifies, a jury could find Artzberger had
some level of decision-making authority.  As such, Brown compels
the finding that Plaintiff states a prima facie case for
discrimination.  See 581 F.3d at 183-84.

The burden must then shift to Defendants to state a
legitimate reason for terminating Plaintiff; they have done just
that.  Defendants clearly identify evidence in the record
suggesting Plaintiff was fired because he was caught urinating
on the floor of a warehouse storing food-grade product, in
violation of Mafco's stated policies.  See, e.g., (ECF No. 17-5
at 44).

The burden then shifts back to Plaintiff who "must point to
some evidence, direct or circumstantial, from which a factfinder
could reasonably either (1) disbelieve the employer's
articulated legitimate reasons; or (2) believe that an invidious
discriminatory reason was more likely than not a motivating or

14

determinative cause of the employer's action." Tomasso v.
Boeing Co., 445 F.3d 702, 706 (3d Cir. 2006) (quoting Fuentes v.
Perskie, 32 F.3d 759, 764 (3d Cir. 1994)) (internal quotation
marks omitted).  Plaintiff must "demonstrate such weaknesses,
implausibilities, inconsistencies, incoherencies, or
contradictions in the employer's proffered legitimate reasons
for its action that a reasonable factfinder could rationally
find them unworthy of credence, and hence infer that the
employer did not act for [the asserted] nondiscriminatory
reasons."  Id.  Put differently, Defendants are entitled to
summary judgment if they prove "that if [race] had not been part
of the process, [any termination] decision . . . would
nonetheless have been the same." Brown, 581 F.3d at 183–84
(quoting Price Waterhouse, 490 U.S. at 279, 109 S. Ct. 1775
(O'Connor, J., concurring)).

      A review of the record taken as a whole reveals Defendants'
decision to terminate Plaintiff would have been the same no
matter his race, and despite Artzberger's inappropriate remarks.
The record establishes Plaintiff was fired because Defendants
observed what they believed to be Plaintiff urinating on the
floor of a warehouse.  The material facts presented indicate
Mafco's investigation focused precisely on that issue: whether
Plaintiff in fact urinated in a warehouse.  Mafco interviewed

15

witnesses, obtained DNA sampling, and commissioned culture swabs at a local laboratory for that purpose.  The record also reveals that Plaintiff and his union were provided ample opportunity to engage in the investigatory process, which undeniably focused on the urination incident.  At the conclusion of Defendants' investigation, Plaintiff was provided with a letter specifying he was being terminated for violating company policy, namely, urinating on the floor and violating the orders of a supervisor. Plaintiff does not suggest those rules would apply differently to others of different race or color, or that Defendants have treated other, similar situations differently.  Instead, it is quite clear that any individual committing the rule violation Defendants allege Plaintiff committed would have been treated identically.

Defendants argue that Plaintiff's own testimony suggests a lack of racial animus and supports the conclusion that he was fired because Defendants believed he urinated on the floor. Defendants' argument has merit.  Plaintiff was asked whether, "[s]itting here today, your belief is that you were terminated because either Mr. Artzberger believed you had urinated on the floor or he didn't like you" to which Plaintiff responded affirmatively.  (Pl. Dep. 196:8-196:11).  Plaintiff also surmised that he was fired because he was "working two jobs, and

they wanted me to switch to second shift . . . and since I was the senior electrician, I said no.  I ain't switching to second shift, so I guess he found some way to get rid of me." (Pl. Dep. 196:8-196:19).  Such testimony further suggests a lack of racial motivation in Plaintiff's firing.

In sum, the record proves Plaintiff would have been fired no matter his race because they believed – and with good reason – that he had violated an important company policy.  There is simply inadequate evidence from which a reasonable juror could conclude the proffered reason was tainted by pretext intended to obscure and justify a racial animus.  As such, Defendants are entitled to summary judgment on Plaintiff's discrimination claims.  See Brown, 581 F.3d at 183–84.

## II.  Title VII and NJLAD Retaliation Claims

Like Plaintiff's discrimination claims, his retaliation claims are governed by the familiar McDonnell Douglas framework. A plaintiff seeking to establish a prima facie case of retaliation under Title VII or the NJLAD must show: (1) that she engaged in a protected activity, which can include informal protests of discriminatory employment practices such as making complaints to management; (2) "adverse action by the employer either after or contemporaneous with the employee's protected activity"; and (3) a causal connection between the protected

activity and the adverse action.  Moore v. Sec'y U.S. Dep't of
Homeland Sec., 718 F. App'x 164, 166 (3d Cir. 2017) (quoting
Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 193 (3d Cir.
2015)).

The NJLAD also prohibits retaliation against an employee
because that employee "has opposed any practices or acts
forbidden under [the NJLAD] or because that person has filed a
complaint, testified or assisted in any proceeding under [the
NJLAD]."  Nuness v. Simon & Schuster, Inc, 221 F. Supp. 3d 596,
605 (D.N.J. 2016) (quoting N.J. Stat. Ann. § 10:5-12(d)).  To
state a prima facie case for retaliation under the NJLAD,
Plaintiff must show that he (1) engaged in protected activity,
(2) suffered an adverse employment action, and (3) that there
was a causal connection between the protected activity and the
adverse employment action.  Id. (quoting Sanchez v. SunGard
Availability Servs. LP, 362 Fed. Appx. 283, 287 (3d Cir. 2010)).
Once a plaintiff establishes a prima facie case of retaliation,
the defendants must "articulate a legitimate, non-retaliatory
reason for the decision."  Young v. Hobart W. Grp., 897 A.2d
1063, 1072-73 (N.J. Super. Ct. App. Div. 2005) (quoting Romano
v. Brown & Williamson Tobacco Corp., 665 A.2d 1139, 1142 (N.J.
Super. Ct. App. Div. 1995)).  Next, "the plaintiff must come
forward with evidence of a discriminatory motive of the

employer, and demonstrate that the legitimate reason was merely a pretext for the underlying discriminatory motive." Id. (quoting Romano, 665 A.2d at 1142).

Plaintiff has not stated a prima facie claim for retaliation under either Title VII or the NJLAD. Plaintiff readily admits he did not report the racial slur Artzberger allegedly called him to anyone before he was fired, and therefore, he cannot be found to have been engaged in a protected activity. See (Pl. Dep. at 216:7 – 217:25) ("Yes. I said I'm going to say something, but I never said nothing"). Instead, Plaintiff testified that he only first reported the matter after he was fired. See (Pl. Dep. 216:2-8). As such, Plaintiff's retaliation claim must fail.

### III. NJLAD Aiding and Abetting Claim

The NJLAD "holds individuals liable for their actions in aiding and abetting violations of an individual's rights rather than simply imputing general liability to the employer for the employees' acts." Long v. Leggett & Platt, Inc., No. 15-cv-4907-NLH-KMW, 2017 WL 4284469, at *4 (D.N.J. Sept. 27, 2017) (quoting Lopez-Arenas v. Zisa, No. 10-2668, 2012 WL 933251, at *10 (D.N.J. Mar. 19, 2012)). There are two forms of aiding and abetting under NJLAD: an active form and a passive form. Id. (quoting Lopez-Arenas, 2012 WL 933251, at *10). It remains

unclear which form Plaintiff pursues in this action.

To establish the active form, three elements must be proven: (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation.  Id. (quoiting Hurley v. Atl. City Police Dep't, 174 F.3d 95, 127 (3d Cir. 1999)).  To establish the passive form, "a plaintiff must show that the supervisor holds a duty to act against harassment and yet remains deliberately indifferent to its existence."  Id. (quoting Lopez-Arenas, 2012 WL 933251, at *10).

Having concluded Defendants have not committed an actionable wrong, as a byproduct, any aiding and abetting claim must also fail.

<u>**CONCLUSION**</u>

For the reasons stated above, Defendants motion for summary judgment (ECF No. 17) will be granted.  The Clerk will be directed to mark this matter closed.

An appropriate Order will be entered.


Date: August 13, 2020             s/ Noel L. Hillman
At Camden, New Jersey             NOEL L. HILLMAN, U.S.D.J.